23-1944 and 23-1971, United States of America v. Michigan, argument is not to exceed 15 minutes for the appellant and 15 minutes to be shared by the appellees. Mr. Patterson for the appellant. And we would say we thank you for the good information you gave us earlier. We don't need to go back through the entirety of the history here. One of our particular interests in this case is jurisdiction. So please be sure to include that in your argument. Thank you, Your Honor. Good afternoon. May it please the court, Chris Patterson on behalf of the Coalition to Protect Michigan Resources. We are returning to this court after a year and a half in a decision that was issued from this circuit indicating that the coalition would have an opportunity on appeal if the proposed decree that was being discussed at that time did not, from our perspective, protect the fishery. We think that the district court, as was indicated at the... The problem is, I think we fairly clearly told you that you had to wait for the decree and then file, if you were happy, file a motion to intervene for purposes of appeal. So, Your Honor, I think that if you look at the district court, the end of the opinion, the district court indicates that pursuant to the portion of this circuit court, they are providing the ability for us to take an appeal. I think the question is, as you know, a district court doesn't control our jurisdiction. So all I want to point out is, I think we told you what to do. And I understand why you didn't do it, but that presents a problem for us. Well, Your Honor, I think there's actually a line of cases that would support the ability to firm the district court on other grounds. I understand the language in the district court says, pursuant to this circuit court's opinion, they're granting us the ability to appeal. And of course, at that point, there wasn't a basis for us to have to file a motion to intervene on limited appellate rights. But there are cases that we did brief, particularly the City of Cleveland case, as well as the United States v. Green case. And both those cases, we think, stand in the proposition that a district court would have the equitable ability, under this court's president, with two sort of factors at play that we think are important. But in the City of Cleveland case, I mean, the court makes it very clear, without the City of Cleveland, there'd be no case. So they also got to participate in the third party practice. Correct. I understand, Your Honor. But they were a party. Correct. And you were never a party. We were not a party, Your Honor. But the precedent that's provided in that case does still indicate those two factors for which, if you are treated as a de facto party, and you are aggrieved by the decision, the district court would have authority to allow us to take an appeal. I think those cases within themselves would suggest why we would not file a motion under Rule 24 to have been provided limited appellate rights to take the appeal procedurally. I think in addition to that, the case that's actually helpful from the U.S. Supreme... Let me just follow up on City of Cleveland for just a second so I give you a chance to respond to another concern that I have. You're starting with the assumption that you were a de facto party. And that's the language that was cited by the court in City of Cleveland. How can you say that you were a de facto party when you tried to become a party seven different times and it was denied, including more recently by this court, every single time? And, Your Honor, that's where I think this circuit's decision actually in the United States v. Green helps develop that sort of idea. Because in the United States v. Green, they look at a situation of a criminal case unlike in the situation with Cleveland where I can appreciate that they were a party and they then were able to appeal for purposes of a third-party claim for which they were not a party. In the United States v. Green case, I think it's helpful in that that case would say that for this court, you have a criminal case. You end up with the victim of that case having a civil case separate from the criminal case, then files a motion for purposes of trying to get the pre-sentence report released. That motion ends up getting denied and this court allows for the ability for them to have been able to pursue that appeal on the denial of the motion. And I think what's helpful is that Green is actually two years after City of Cleveland v. Ohio and what's helpful about Green is that the appeal principles that they rely upon are the same principles that they suggested with respect to City of Cleveland v. Ohio. That idea of, and I think what's important about the language, it doesn't say that we ourselves are being perceived that we would like to be a de facto party. It says that if the process that you're being provided treats you as a de facto party. And what's helpful to this court in affirming the district court's position on allowing us to appeal here is that we were provided a process that was very similar as an objector, as was provided to the Sioux St. Marie tribe. So I think we have a factual comparison in the record below before the district court to provide support in really satisfying that first portion of the prong in this court's precedent. There's no question that the Sioux tribe was a party. I understand, Your Honor, and I think the way that this Sixth Circuit's precedent reads, it asks for in one of those factors, it says, were you treated as a de facto party? Were you provided, we were provided a similar opportunity under a court's order to say since you've been long standing involved as an amicus, you should be entitled to then file objections as well. And are you saying Greene or Greer? Greene, G-R-E-E-N, Your Honor. It is called the In Re Siler case, 571 F3rd at 604, and that's a 2009 case. I also think in addition to this court's precedent, because I can appreciate that the briefing opposed to our position actually cites two U.S. Supreme Court cases, but I think those cases, if you look at them, can be distinguished on the facts of what we were provided here. In addition to that, those two cases are actually decided in the 80s. There's an intervening Supreme Court case that we cited that I think is helpful in really saying why the Sixth Circuit's factors that they announced in their 2007 and in their 2009 case, and that's the Scarletti case. Again, that case is not on all fours. I can appreciate that as the district court noted, this is a unique case. I think that was discussed earlier, but that Supreme Court case in 2002 further, I think, supports what this circuit has done in those two cases. I do think in providing us the ability to appeal, I'm happy to take any more questions on that issue from the panel, but I think in providing us the opportunity to appeal, we do have problems with respect to the process that we were provided, which we do think would have resulted in changes to the potential proposed decree. What I think is important is that we're not standing here having been provided the opportunity to appeal and asking that this court would remand to throw out the proposed decree or to have a fully rewritten decree. What we've presented as a part of our appeal is sort of narrow legal errors that we think on remand can be corrected. The result still would be to not sort of upset the years of work that have done, but to provide for a decree that will ensure that it protects the resource, particularly with respect to the biological data that was submitted as part of the objection process. I think this probably isn't lost with respect to the argument that just occurred before us, but it's extremely important that from our perspective, the district court's opinion enters a 24-year decree related to the fishery resource. From our perspective and being able to participate, the time to participate and correct these errors is now. It's not as the decree is then executed and administered over that two-and-a-half decades. Do you think this depends on whether you actually qualify as a de facto party? I actually think that those cases would allow for the district court's equitable authority, so both Greene and the Cincinnati case, as well as the district court relying on its inherent equitable authority. It was already performing an equitable procedure as it relates to the allocation of the resource. I think treatment of us as a de facto party is supportive of what the district court ultimately did. Even though in several aspects you were not given the full authority and you are not, in fact, a sovereign signatory, right? Yes, correct. Yes, Your Honor. I think the other line of case that's particularly ... It's not binding on this court, but the other way to look at the district court and allow for an alternative affirmance on that issue to get to the merits of our appeal is the district court, although not going through Rule 24, that would be the only option that's being indicated. There's nothing in the plain language of Rule 24 that obligates the district court to be unable to allow us the ability to take this appeal consistent with those two cases in the Sixth Circuit. The case that we did provide, though, the Cooper case, is a case, again, not binding. I think it's a District of New Jersey case where they did allow a district court to sua sponte, grant limited rights of intervention for purposes of an appeal. I think that would provide another alternative for this court to allow us to be present and be able to have our appellate's rights heard as it relates to the substantive challenges that we've presented below. Those are ... The substantive ... You presented eight? How many objections did you have? Eleven? I'm trying to ... Yes, so ... Fewer than the 137, for sure. Correct, Your Honor. The lower court issued an order directing us exactly how we would be entitled to participate. That order allowed us to file objections. We filed 11 objections followed and supported by six supporting affidavits. We pursued those objections through to a two day hearing. The first day was basically our objections. Then there was a longer period of time to hear the other, the Sioux St. Marie tribe's objections. At the end of that process, though, the district court was clear in that those affidavits that were filed were basically the closed record on the evidence. At the close of the hearing, what the district court judge indicates is that the court may consider reopening the record. The orders at that time had all indicated that only the evidence in support of our objections at that time was what would be consistent with the record. Then, of course, the stipulating parties filed affidavits in response to the affidavits that we presented. That included your affidavits. It included your expert testimony. Yes. The court ruled on those, right? Admitting some of the affidavits, rejecting the report. You had somewhat of a hearing on the evidence that you put forward. Your Honor, we did it. Going into that, we asked whether there would be evidence, live testimony presented at those two days of hearing. It was limited to oral argument by counsel. The court obviously did rule upon our affidavits and the information that we submitted, but not until the final order. I think the issue that we take with respect to one of the errors on appeal is that the district court should have placed the burden on the stipulating parties. I think we all agree that the law of the case was the 15 factors provided in that 1985 decision. There should have been a robust record developed as to ensuring that the decree would satisfy the law of the case, being Enslin's 1985 decision. In addition to that, we cite in our briefs the Williams Standard because we understand that we were coming through the case as having been provided an objection hearing and being an objector, allowing the ability to then appeal. We think that that standard combined with Enslin also adds in the requirement that the burden is on the stipulating parties to show that the decree is fair, adequate, reasonable, and protects the public interest. The pieces that we presented in our affidavits, and one of the sort of issues that we take with respect to the process, is you end up with biologists. We filed affidavits with three biologists. They filed affidavits in response. If you look at the lower court's analysis of the findings of fact, he indicates which affidavits he ends up selecting to provide weight to then address the objections. The issue that we have with respect to the analysis is that deciding those competing issues on paper alone, when he noted during the objection process that he had similar concerns that he may address in an evidentiary hearing later, and that he would decide that issue is concerning to us. You have competing experts. They have significant qualifications. We were the only objector who provided an affidavit from a biologist, Chris Horton, who was not involved in actually putting forth language for the decree, or who otherwise was being an employee of the parties, or otherwise paid by the parties to further sort of support the provisions that were in that decree. I think what was helpful for his affidavit, that you don't see the district court take issue in, is he presented how management frameworks across the country are not going in the direction that the 2023 decree goes. Those are the big four substantive areas that we assign and everybody understands that the entire decree and the preservation of the resource works on harvest limits, but if one of those core foundations, target mortality, harvest limits, those are not properly assessed, the decree itself would not satisfy Williams and the insulin standards. I think your time is up. Thank you. We'll have your rebuttal. No, you had some questions. I'm sorry. Just one quick question, and then we can follow up later if we want. Of these 11 objections, which would you say is your primary, if it's possible to characterize it that way, or best objection? Or is it a group of four, as you just alluded to? Yes, so your honor, we would say that on appeal, what we did was we condensed it to those four if this court were to get to the substantive issues, because Williams does indicate, if you agree with us, that those issues are harvest limits, target mortality, gill net expansion, as well as the information sharing issues. That's what we brought on appeal. When you get back up, just tell me which objections they are, will you please? Of the one through 11. The objections as in number, how they were presented in the district court? Yes, right. Okay, thank you. Good afternoon, your honors. May it please the court. Ben Richmond for the United States. Because the coalition is attempting to appeal from the 2020 case in amicus, rather than as a party, this court should dismiss this non-party appeal, but if the court reaches the coalition's appeal, the coalition presents a number of substantive objections, none of which we think are supported by the record. I'm happy to address any of those objections to the extent the court has questions about them. I'll start with the jurisdictional question, as your honors indicated you had an interest in. This is a non-party appeal. The rule that only parties to a lawsuit are those that properly become parties may appeal an adverse judgment is well settled. Here, the coalition is in amicus, didn't intervene for the purpose of appeal, this court should simply dismiss for lack of jurisdiction. I can go through the different cases that were discussed in the coalition's opening argument that don't provide a right to appeal here or jurisdiction of the court. So City of Cleveland is third-party practice. City of Cleveland is pretty easy. Could you address United States v. Green because that wasn't cited in the earlier briefs by the coalition because they weren't briefing jurisdiction. You then briefed jurisdiction. They filed a reply, and you haven't had a chance to reply to the reply. So how do you respond to United States v. Green? So I think Green is the Inree Seiler case, and that was a case that's I think specific to criminal proceedings, specifically the Crime Victims' Rights Act. Those were statutory rights for victims to participate in criminal proceedings. I think because that statute isn't at issue here, it just isn't a one-to-one application. In terms of Devlin, I mean, Devlin is a Supreme Court case, but it's about certified class members being able to appeal a decree. And I think the coalition's primary objection seems to be based on this idea that they were treated as a party below, but simply objecting below as a litigant, that is not sufficient to bring an appeal of a judgment. That's clear from the Marino case, 44 U.S. to 304. So in that case, there was a decree that was proposed. Litigants commented on that decree, and that was insufficient, according to the Supreme Court, for those parties to bring an appeal. Also, to the extent that the court might consider interpreting the appellate right here as a grant of intervention, I think that would violate party presentation issues. We were deprived of an opportunity to argue the intervention issue in the district court because it's sua sponte, granted this appellate right, not on the motion of any party. And I think, Your Honor, you're absolutely right that this court directed the coalition to move to intervene. That's at 68 F. 4th at 1027. This court directed the coalition to move to intervene for the limited purpose of appeal, and that motion was never filed. I think the awkwardness here that we might as well just recognize is that there would be no basis to file a motion to intervene for purposes of appeal before the decree was entered. Do you agree with that? I think... We said, if you don't like the decree, come back. Yeah, I... So it doesn't make any sense to hold them to some burden to come back before the decree was entered. They'd already tried to do that, and we'd rebuff that. Make sense? Yeah, I think I understand Your Honor's point, but they didn't move to intervene after. I know. So if we put that aside, and we go to after, I think their answer is, well, we didn't think we had to because District Judge Maloney said that we were granted intervener status for purposes of appeal. So what do we do with that? Do we just ignore it, or do we dismiss it because it was beyond his power, or do we dismiss it because, as you say now, he didn't have a right to respond? What do we do with that? So I think if the United States were in the coalition's shoes, we absolutely would have moved to intervene based on this court's direction and based on our reading of law of jurisdiction. I mean, there are clear, bright-line rules in this area of the law, and our position is just the court should enforce them. The coalition had rights here. It had the right to move to intervene. It didn't exercise that right. It slept on its rights, and we think that bright-line rule should be enforced. So of the choices I gave you, we just disregard what Maloney said? Right, and I think the district court, it made an error in granting that appellate right to a sponte. There was no motion before the court, and this court, I think the plain reading of this court's opinion was that the coalition would have to move to intervene. So I think the coalition had rights here, and it slept on them, and there's a clear, bright-line rule against non-party appeals. This court should enforce that rule, and this whole idea of sort of quasi-party status as an amicus, I think this court is abrogating, litigating amicus status. There are no quasi-parties in litigation, so I think this court has an opportunity to lay down a bright-line rule. You know, and the district court was also clear in 2019 when it confirmed the coalition's amicus status. It did not have the full rights of a party. Didn't have any of the rules under the Federal Civil Procedure of filing claims or defenses. Its participation was limited to this objection process. One of the things that Mr. Patterson says that makes some sense is that if there should have been a party and there should have been a hearing and there should have been live testimony from these experts, that it's time to correct that as now, not down the road. But could you speak at least very briefly, because you're much more intimately familiar with this than at least I am. What are the triggers in the decree to, if these assumptions that Mr. Patterson says are wrong and are going in a different direction than other courts that are managing fisheries, should have been adopted, what will signify that? How and when does somebody go back to ask for those things to be reconsidered or corrected? Well, ultimately, Your Honor, the decree is an equitable decree, and so parties can move for changes. And there are specific provisions of the decree that provide that if any party thinks that there should be changes to the decree, if mistakes were made, if adjustments need to be made, there's a process to move to amend the decree. And the 2000 decree was actually amended several times by the district court. So I think the framework is well thought out, and it provides for opportunities to change the decree and change the management structure if that's warranted. I understand if there's new data and something shows too many fish are being taken or the population of the fish is declining more than anybody expected it to, you can come back and ask for it to be revisited based on new evidence. I get that. But does the decree envision, take the coalition as an example, the ability to come back the week after we issue an opinion here, if they don't win, and ask to revisit the same thing, just put forth the same affidavits, the same information, no change circumstances, judge you were wrong, we want a do-over. Does the decree envision that? No, I think with respect to the entry of the decree, the decree has been entered and I don't think you're going to revisit entry. But if there were change in circumstances, the coalition could, for example, try to exercise procedural rights below, move to intervene as a party, and then bring some sort of motion. If that intervention were granted. You can't just say the judge was wrong. You have to come back with changed circumstances. That's what you envision. Yeah, in terms of the entry of the decree itself. And so beyond the jurisdictional issue, the non-party appeal issue, I think opposing counsel addressed a few of their substantive concerns. I'm happy to take questions of the panel if you have specific questions about the substantive objections, but if not, I'll just turn to the appropriate legal standard argument. Our position is that the district court use the appropriate legal standard by putting the standard, the equitable standard, on the stipulating parties. You know, that equitable standard, it's the 15 factors and it's protecting, you know, the standard that stipulating parties had to meet was protecting the resource and protecting the treaty right. We think, you know, the parties met that standard. I think what the coalition's objection misses is that this was an iterative process in the district court. It ran six months. You know, first the proposed decree was submitted. Then there were objections. Then there were responses with evidence and affidavits the stipulating parties had done attached to those responses. Then there were two days of oral argument. And then after that, there were findings of fact and conclusions of law, which all parties and the coalition were permitted to submit. So that was this iterative process that the district court used to review all the evidence before it over six months. And through that process, I think the district court acknowledged that the burden was on the stipulating parties. And the stipulating parties, all of our expert affidavits from resource managers and biologists, met that equitable standard. In terms of affirmative findings, I think you could look to the record at record entry 2130, 15215, 15221. You know, it seems like what the coalition is trying to do is clip down this 139-page opinion to specific parts where the district court is weighing the evidence, and it's looking at the coalition's evidence, and it's looking at the stipulating party's evidence. But ultimately, the burden was on the stipulating parties, and the stipulating fact that arose out of that, that would be abuse of discretion in your mind? Yes, abuse of discretion. I think specific fact-based findings would actually be reviewed for clear error. The ultimate standard is abuse of discretion. In terms of the evidentiary hearing argument, the court, I think here, it signified to the parties and inquired into whether further evidence needed to be submitted. And our position is that the coalition never made any showing of additional evidence. In their briefs, they're pointing to a footnote in its objections, but we don't think that footnote properly requested an evidentiary hearing. And we think, you know, also a footnote is insufficient to preserve arguments in the circuit. And ultimately, the coalition didn't make a further proffer of evidence, which would have been submitted at an evidentiary hearing. So the district court reviewing all the evidence before it and determining a further evidentiary hearing was needed. Again, I do not think that was an abuse of discretion. I think the coalition might also have been talking about harvest limits. The harvest limits here, we think they're clearly enforceable. We pointed to numerous parts of the decree that show the harvest limits are enforceable. Even if a party didn't follow the harvest limits, there are many numerous provisions in the decree that ensure that there are remedies for those other parties. There's dispute resolution. There's the ability to go to the district court for immediate relief. And there's strong calculated every year. So if you overharvest one year, then your future harvest will be lower. The next harvest limit will be lower. I won't fully go into these different factual issues. You know, we don't think the coalition's objections are backed by the record. The district court did not abuse its discretion entering the decree. So unless there are any other questions from the panel, for these reasons, the judgment should be affirmed and I'll let the state continue to argue on it. Thank you. Good afternoon, your honors. Kelly Drake for the state of Michigan. I'll just touch on a couple points here rather than, again, avoiding being repetitive of Mr. Richmond. With respect to the jurisdiction issue, there's been quite a bit of discussion of city of Cleveland and U.S. being green or in Ray Seiler. But as Judge Strange pointed out, the preliminary question is whether the coalition was in fact treated as a party before you get to the exceptions for when that is, when they have appeal rights. And here it's pretty clear that the coalition was not treated as a party for many of the reasons that have already been explained. But in addition to that, I want to point out that Judge Maloney, in his opinion, entering the decree indicated that he allowed the coalition to file objections to the proposed decree because they had actively participated in the case as an amicus for decades. So he didn't allow them to file objections because he saw them as a party or was giving them that kind of stature. He did it because they are an amicus. They've been around for a long time. They've been given kind of an elevated status as an amicus, but they are still an amicus as we know, based on the many times they've tried to intervene in this case and then unsuccessful in doing so. I also want to briefly summarize what are the factors that, or the facts in the case that tells you that they were not de facto parties. Sure. So we start with the fact that they've always been an amicus through the various permutations of how this group that is now known as the Coalition to Protect Michigan Resources has developed through the years. The various members of the group and the sort of coalition groups have always been treated as amicus. They've tried to intervene, it's either seven or eight times. They have been denied intervention each of those times. In 2019, they filed a motion with the court before the parties were starting negotiations to confirm their status as an amicus. The district court did so, confirmed their status as an amicus, said you don't have full rights of parties, you don't have the ability to file pleadings, you can't bring motions, etc. It was very clear their role was as amicus. In the negotiations, they were observers. They did not have a seat at the table, they weren't taking positions, they weren't negotiating the substance of the decree. They had the opportunity to talk to parties outside of the negotiations, but they did not participate actively in the negotiations. And in 2022... If I'm right, thinking back, because I was on the panel that addressed whether they should be a party, their contention was that the state was representing their interest because the state is a sovereign, and the state has responsibility over the fisheries as well, and that it was only when they determined that the state was no longer adequately representing their interest, they then wanted to represent their interests on their own. So they certainly were not even a de facto party up until the breakdown in that relationship, I would think, because they said they were relying on the state. I agree, Your Honor. So if we narrow the time frame down, what happened after that? When they say they were kicked out of being an observer, and the state flipped on them and went in a direction the Fisherman didn't like, what was their role after that point from which they could say they were a de facto party? First I would refute the concept that they were kicked out of the negotiations, but setting that aside, what changed is the stipulating parties continued to finalize the decree, submitted it to the court with a stipulation for entry, and then at that point we kicked off the objection process. And as the district court noted in its opinion, it allowed the coalition to participate in that process as an amicus because it had been an amicus in this for so long. So that's really the only thing that changed was that it was allowed to participate in the objection process, but as Moreno tells us, that's not significant enough to confer party status. And I think it's also important to keep in mind that the coalition is represented by the state in these negotiations. This court held last year that it was adequately represented by the state in these negotiations. These are Michigan citizens, non-tribal citizens, who participate in the fishery at the permission of the state, under licenses issued by the state, under regulations issued by the state, and enforced by the state. This is not a sovereign over my time. I don't know if the panel has any further questions. No, thank you. Thank you. Judge McKeague, I want to respond to the question you provided me. So the numbers which are based on the district court's analysis is number 2, number 5, number 7, and number 11. What I think is particularly important about number 11 is that 11 presents an issue that's not completely based on a back-and-forth issue with conflicting affidavits. Number 11 is really the objection that resolves around large deviations shall be rare, and it gets into the language of the ambiguity in enforcing the Harvard's limits. That objection also would be important for the court to look at, because even the district court below, at both the objection hearing and in the final opinion, did have reservations related to that objection. I'm curious about you picking that one out, because it would just seem to me logically speaking, and so I want you to be able to tell me why I'm being illogical, that that would be one of the last things we would want to get into when we were revisiting whether the decree is fair and equitable, and whether there was any abuse of discretion here, whether there could have been different and arguably better language being used. You're really asking us to become the district court, or to send it back and tell them to clean it up. Well, I think, Your Honor, with respect to the errors that we raised, we have two errors that we think don't relate to getting into an abuse of discretion and deciding that these specific standards should be changed. We raised them because in the objection process, Williams tells us in the Sixth Circuit that you, first of all, should identify those areas for which you would want a court to suggest there should be reasonable accommodations made to the document that's presented. So we had to identify those for purposes of telling the district court and on appeal telling this court what we think should be accommodated in having changes made. And number two, it goes to the fact that it's only in support of our issue that we say the district court only went one by one, that the standards suggest you should look at the totality of those issues that we present. So you asked me to present the four that we took on appeal. We really present them as a combined package for our overall concern that the decree is going to have issues in complying with both the insulin standards and Williams. And the court never really took it up. So if a district judge is sitting down to write a decree and he or she is faced with 139 objections by a party and 11 objections by an amicus, and the party and the amicus all identify them by numbers, 1, 2, 3, 4, so on and so forth, how does the district court then not respond to the objections going one by one? So we specifically told the district court to be careful in that analysis. We said that in the original objections that we filed, we responded to the order to file objections. We developed an entire standard provision and said, we're numbering these for purposes of allowing this to be chunked apart, but it's particularly important to take them under the law of the case and the standard as we understand it as an entire issue with the  If he hadn't broken it up and discussed them one on one, you would claim that he hadn't considered all your objections? Well, no, Your Honor. I think if he hadn't broken it up and he would have reviewed it in the totality, you would end up with an analysis like you see from Judge Enslin, where he sits back and he looks at trying to decipher between the parties. He had, of course, live witness testimony to discern the distinctions between the standards that were presented. He had live witness testimony to look at the biological data. He was able to clearly have presented, through his 15 factors, a process on how to do that. The district court didn't do that in this case. In addition to that, I want to read the So a good illustration of that, just for my purposes, would be to look at the Enslin Decree versus the Maloney Decree. Absolutely, Your Honor. Look at the 1985 Enslin decision. Thank you. With respect to the points on jurisdiction, there are some comments made, two things I want to sort of identify on that issue. I think it's much more narrow than what's being suggested. It is not indicating that we would have complete rights as a party. As you look at Green and if you look at even City of Cleveland, which I appreciate, Your Honor, indicating that it's not on all fours with our case, which we agree, but those cases do show that we're talking about the very narrow ability for a person or an entity who's treated like a party, in a process, to be able to then have appellate rights. We're not talking about full intervention or full party status for which the seven or eight times that were referenced in the record. That's what we were seeking. I think it's a completely narrower issue that the Sixth Circuit has preserved in those cases. In addition to that, you heard that there's a bright line rule in Merino and that this court should return to that bright line rule. I think what's important is that's why we cite to Devlin. We understand that there are distinctions, but the Supreme Court makes clear in 2002 that there are exceptions to the bright line rule and we think this court articulated them when it issued its decisions in 2007 and 2009. In addition to that, I think you can accept the district court's inherent authority to have provided us that relief under the direction from this court. I think as Your Honor recognizes, it was our right to be able to participate was already addressed in that opinion. For us to have to file a motion to do so would have not been clearly present from what the district court awarded. The other item that I want to go back to and address is with respect to the evidentiary hearing that was recognized. I just want to quickly note that it was the court that decided when the evidence of the record would be accepted and when it was closed. During that process, the findings of fact, that's not a submission of additional evidence. That's not an ability to rebut affidavits that were presented only in response to our position. I think it's important from our perspective that Sixth Circuit allows us to be here, that there are cases in addition to the decision that the Sixth Circuit issued just a year and a half ago, and that if you get to the merits of our appeal, what we think is probably particularly on point is dealing with a remand for purposes of instructions under Williams and Enslin. We address that in our brief. I thank you for your time. Thank you. Once again, we thank you for all the work that you've done on a very long and important case. We will take it under advisement and we hope in not too long course, we will have a response back to you.